**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marisela Velasco, | No. CV-18-02340-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Bodega Latina Corporation, et al., | |
| Defendants. | |

Plaintiff Marisela Velasco slipped and fell while shopping at a grocery store owned by Defendant Bodega Latina Corporation. Plaintiff believes Defendant was negligent in allowing a puddle of water to be on the floor. Defendant now seeks summary judgment by arguing it did not have actual or constructive notice of the water. Plaintiff responds that there is a dispute of fact whether Defendants "did enough" in monitoring the condition of the store. (Doc. 37 at 6). Plaintiff has not, however, pointed to evidence in support of her various theories of liability. Therefore, Defendant's motion for summary judgment will be granted.

## FACTUAL BACKGROUND

Most of the relevant facts are undisputed but where there are disputes, the following presents the facts in the light most favorable to Plaintiff. On May 20, 2016, Plaintiff was grocery shopping at Defendant's store. While walking through the store, Plaintiff slipped and fell on a puddle of water in the store's produce section. The incident was captured on surveillance video.

The surveillance video depicts two aisles, with bins of produce between them. At 2:15 p.m., the video shows two women pushing a shopping cart down the left-hand aisle. There is a young child seated in the shopping cart. The cart stops next to a produce bin and one of the women begins to select produce. The other woman is looking at her phone. While stopped, the young child reaches down into the cart and picks up what appears to be a container of liquid. The child seems to drink from the container and, at 2:18:35 p.m., tries to put the container back in the cart but the container tips over. The video does not show liquid spilling out but the woman who was looking at her phone quickly straightens the container and then throws up her hands, as if in frustration. Neither woman attempts to clean up a spill nor does either woman alert an employee. At 2:18:59 p.m., the women and child continue down the aisle.

The video shows a few other customers walking in the area where the women and child had been. It does not appear that anyone notices water on the floor. At 2:20:00 p.m., one of Defendant's employees appears in the video. That employee walks down the right-hand aisle. While walking down the aisle, the employee is often looking to her left, away from the area of the puddle. When almost parallel with the puddle in the left-hand aisle, the employee turns and continues down a perpendicular aisle. The employee does not go into the left-hand aisle and there is no indication from all the evidence offered that the employee could have seen the puddle from her position in the right-hand aisle.[1] At 2:22:09 p.m., Plaintiff can be seen walking down the left-hand aisle. At 2:22:31, Plaintiff slips on a puddle of water and falls to the ground, suffering injuries.

In its summary judgment briefing, Defendant argues the puddle of water on which Plaintiff slipped originated from the child in the shopping cart. If that is accurate, the water was on the floor for slightly less than four minutes. Plaintiff disagrees that the puddle of

---

[1] That employee died sometime after these events and before Plaintiff could question her. The video also shows an employee of a separate business located in Defendant's store walks by the location of the puddle. That individual, however, has no formal relationship with Defendant. As described by Defendant's store manager, the individual worked for "Moneygram," a business that rented space in Defendant's store. Moneygram is "completely separate from [Defendant's] store." (Doc. 35-5 at 50). Plaintiff has not pointed to any facts establishing this individual should be deemed Defendant's employee or agent.

water originated from the child. Instead, Plaintiff appears to believe the water was on the floor for a longer period. Plaintiff, however, has not offered any evidence supporting an alternative source for the water.

On the day of Plaintiff's fall, Defendant had two employees patrolling the store looking for spills or other hazards. As described by the store manager, Defendant "always has two employees on duty, referred to as 'runners,' whose only job was to '[s]weep and just look for any -- anything that can cause an incident on the floor for our employees or customers." (Doc. 35 at 2). Usually one of those runners was assigned to the produce section, the section where Plaintiff fell. (Doc. 35-5 at 53). Defendant required its runners to sign "sweep sheets" every thirty minutes indicating they checked the areas they were responsible for. The sweep sheets for the date of Plaintiff's fall indicate the produce area was checked and cleaned at 2:00 p.m., approximately twenty-two minutes before Plaintiff's fall. (Doc. 35-6).

In June 2017, Plaintiff filed suit in Maricopa County Superior Court alleging Defendant had maintained its store in an "unreasonably dangerous condition" by allowing a puddle of water to be on the floor. (Doc. 1-2 at 4). Defendant answered the complaint and the parties proceeded with litigation in state court. In July 2018, Defendant removed the case to federal court. The Court informed Plaintiff she could obtain remand if she objected based on the timeliness of the removal. Plaintiff chose not to object on that basis and the case remained in federal court.

## ANALYSIS

### I.  Federal Summary Judgment Law Applies

Defendant seeks summary judgment on Plaintiff's sole claim for negligence. Because this case is in federal court based on diversity jurisdiction, "the procedural aspects of summary judgment are governed by the Federal Rules of Civil Procedure, and the law of the forum controls the substantive issues." *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015). Thus, contrary to Plaintiff's arguments that Arizona's law regarding summary judgment should apply, the Court must apply federal summary

judgment law while still applying Arizona substantive law.

Under federal summary judgment law, Defendant has the initial burden of producing "evidence negating an essential element" of Plaintiff's claim or "show[ing] that [Plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If Defendant carries that initial burden, the burden shifts to Plaintiff to produce at least "enough evidence to create a genuine issue of material fact." *Id.* at 1103. Such evidence must be more than "[a] scintilla," more than "merely colorable," and cannot rest on speculation. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989); *United States Postal Serv. v. Ester*, 836 F.3d 1189, 1198 (9th Cir. 2016) (speculation not enough to defeat summary judgment). If all Plaintiff offers is speculation about what might have happened, the Court must grant summary judgment in favor of Defendant. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

**II.    Arizona Premises Liability Law**

Under Arizona law, Defendant had "an affirmative duty to make and keep [its] premises reasonably safe for customers." *Chiara v. Fry's Food Stores of Arizona, Inc.*, 733 P.2d 283, 284 (Ariz. 1987). But Defendant was "not an insurer of [its customers'] safety and [was] not required to keep the premises absolutely safe." *Preuss v. Sambo's of Arizona, Inc.*, 635 P.2d 1210, 1211 (Ariz. 1981). Thus, "the mere occurrence of a fall on [Defendant's] premises is insufficient to prove negligence." *Id.*

Arizona has adopted four ways a customer might impose liability on a store for a slip-and-fall. The first three options are straightforward, but quite difficult for an injured person to prove. Those options require a plaintiff prove 1) the dangerous condition was the result of the store's acts or the acts of its employees, or 2) the store had actual knowledge or notice of the dangerous condition, or 3) the dangerous condition was present "for such a length of time that in the exercise of ordinary care [the store] should have known

of it and taken action to remedy it (i.e., constructive notice)." *Walker v. Montgomery Ward & Co.*, 511 P.2d 699, 702 (Ariz. Ct. App. 1973).

Long ago, the Arizona Supreme Court recognized these first three options create "substantial hurdles" for a plaintiff because a plaintiff "will rarely be able to trace the origins of the accident." *Chiara*, 733 P.2d at 285. That is, a plaintiff will often have no way of knowing what caused the dangerous condition, whether a defendant had actual knowledge of the condition, or whether the dangerous condition had existed for long enough such that the store should have known of it. *Id.* To lessen the "seeming inequity" of requiring a plaintiff prove such difficult matters, Arizona has adopted a fourth option known as the "mode-of-operation rule." *Id.*

Pursuant to the mode-of-operation rule, a plaintiff need not prove the store had actual or constructive notice of the dangerous condition. Instead, a plaintiff can prove the store was operated in such a manner that the store should have "reasonably anticipate[d] hazardous conditions would regularly arise." *Id.* Once a plaintiff establishes that, she must also prove the store "failed to exercise due care to prevent harm under the[] circumstances." *McKillip v. Smitty's Super Valu, Inc.*, 945 P.2d 372, 375 (Ariz. Ct. App. 1997).

The parties' summary judgment papers present arguments regarding all four of the options. According to Defendant, Plaintiff does not have any evidence showing the water was the result of Defendant's actions nor does she have evidence of actual or constructive notice. Defendant also argues the mode-of-operation rule does not apply but, even if it did, Plaintiff does not have evidence supporting that rule. Plaintiff disagrees, but only regarding some of the options.

### A. Defendant's Own Actions and Actual Notice

Plaintiff concedes she has no evidence the water was on the floor as a result of Defendant's own actions. Plaintiff also concedes she has no evidence that Defendant had actual notice the water was on the floor. Thus, Defendant is entitled to summary judgment regarding the first two options.[2]

---

[2] Plaintiff's opposition to the motion for summary judgment states "The three ways in which a party can establish notice of a dangerous condition are simply as follows: 1) actual

- 5 -

**B. Constructive Notice**

Defendant argues Plaintiff does not have sufficient evidence to proceed to trial on her constructive notice theory. Under Arizona law, Defendant had constructive notice of the water only if the water was on the floor for long enough that Defendant should have learned of it and taken steps to remedy it. *Walker v. Montgomery Ward & Co.*, 511 P.2d 699, 702 (Ariz. Ct. App. 1973). Plaintiff disagrees with Defendant regarding the length of time the water was on the floor but Plaintiff seems to misunderstand her burden under the constructive notice approach.[3]

To prevail on her constructive notice theory at trial, Plaintiff would have to establish two facts: 1) the amount of time the water was on the floor; and 2) that amount of time was not reasonable given the circumstances. As explained by the Arizona Court of Appeals, the first fact involving the amount of time a hazard was in place is "[o]ne of the most important questions that must be answered in establishing constructive notice." *Walker v. Montgomery Ward & Co.*, 511 P.2d 699, 702 (1973). At trial, the burden would be on Plaintiff to show how long the water had been there. *Id.* at 703. Plaintiff states Defendant is wrong regarding how long the water was on the floor, but she does not offer any evidence of an alternative time. And while Plaintiff argues it is "far from clear" how long the water was on the floor, attorney argument and speculation is no substitute for competent

---

notice; 2) constructive notice; 3) mode of operation of the property. This case falls into category Nos. 2 & No. 3." (Doc. 37 at 6).

[3] Plaintiff argues there is a dispute of fact regarding "constructive notice" because one of Defendant's employees "walks by the area where Plaintiff fell." (Doc. 37 at 6). Plaintiff appears to be referencing the employee who walks down the right-hand aisle. The surveillance video shows that employee was not looking towards the area of the spill. And the fact that an employee was in the general area of a spill is not enough to prove constructive notice; constructive notice depends on the amount of time the water was on the floor, not on whether Defendant's employees were in the general vicinity of the water. *See Spill notice requirement*, 3 Premises Liability 3d § 49:1 (2018 ed.) ("Even though a store employee is working in the vicinity of a foreign substance, constructive knowledge cannot be inferred where the employee is facing in another direction."). Plaintiff also claims "[a]rguments can be made that another employee of Defendants is standing right in front of the liquid." (Doc. 37 at 6). The video does not depict any such employee and Plaintiff cannot avoid summary judgment based on arguments "utterly discredited by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding summary judgment should be granted where party's "version of events is so utterly discredited by the record that no reasonable jury could" believe it).

1  evidence.[4] (Doc. 37 at 7).  Because Plaintiff does not point to evidence establishing the

2  length of time, her constructive notice theory fails as a matter of law.  *Walker*, 511 P.2d at

3  702 (affirming summary judgment where plaintiff had "absolutely no evidence as to how

4  long the foreign substance was upon defendant's floor").

5      **C.  Mode-of-Operation**

6      Finally, Plaintiff attempts to avoid summary judgment by invoking the mode-of-

7  operation rule.  Plaintiff does not, however, provide any meaningful argument or evidence

8  in support of applying this rule.  Therefore, Plaintiff has waived the issue.  *See Martinez-*

9  *Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("Issues raised in a brief that are not

10  supported by argument are deemed abandoned.").

11     Assuming Plaintiff had not waived the issue, the mode-of-operation rule requires

12  evidence that 1) the manner Defendant operated its store "regularly" produced dangerous

13  conditions in the area of Plaintiff's fall and 2) Defendant failed to exercise reasonable care

14  in light of that fact.  On the first requirement, Plaintiff points to no evidence addressing

15  how common spills were in the area where Plaintiff slipped.  To defeat summary judgment,

16

17  [4] Plaintiff's opposition might be read as arguing four minutes was sufficient time to create
a jury question regarding constructive notice.  Plaintiff cites no authority in support of this
18  proposition and available authority shows more than four minutes is necessary to trigger
constructive notice.  *See Moreno v. Target Corp.*, No. 2:12-CV-01357 JWS, 2013 WL
19  780989, at *2-3 (D. Ariz. Mar. 1, 2013) (concluding five minutes was insufficient to trigger
constructive notice); *Cardoza v. Target Corp.*, No. CV172232MWFRAOX, 2018 WL
20  3357489, at *3 (C.D. Cal. June 22, 2018) (noting possibility hazard was in place for 10
minutes before a slip-and-fall was insufficient to support finding of constructive notice);
21  *Espinal v. New York City Hous. Auth.*, 626 N.Y.S.2d 790, 791-92 (N.Y. App. Div. 1995)
("The lapse of a five-minute interval between the deposit of a banana peel or other debris
22  and the accident is insufficient, as a matter of law, to establish constructive notice to the
defendant of the condition and an opportunity to remedy it.").  Multiple treatises have
23  observed time periods of less than five minutes are not sufficient to trigger constructive
notice.  *Store or business premises slip-and-fall: modern status of rules requiring showing*
24  *of notice of proprietor of transitory interior condition allegedly causing plaintiff's fall*, 85
A.L.R.3d 1000 (Originally published in 1978) (citing courts across the country finding 5
25  minutes was insufficient to find constructive notice); *Spill notice requirement*, 3 Premises
Liability 3d § 49:1 (2018 ed.) ("There must be a substantial interval between the time that
26  the substance appeared on the floor and the time of the accident.  Fifteen to 20 minutes has
been held to be a sufficient period of time to constitute constructive notice, as has at least
27  15 minutes, at least 20 minutes, 30 to 40 minutes, or more than an hour.  Shorter periods
of time have been held insufficient notice of a foreign substance on a store floor, such as
28  fewer than 15 minutes, 10 or 15 minutes, 10 minutes, 5 to 10 minutes, fewer than 10
minutes, 3 to 5 minutes, no more than five minutes, fewer than five minutes, and fewer
than two minutes or a few seconds to a minute before the customer's fall.").

1  Plaintiff needed evidence at least creating a dispute of fact regarding how "[c]ustomary,

2  usual, or normal" spills were in the area of Plaintiff's fall. *Borota v. Univ. Med. Ctr.*, 861

3  P.2d 679, 681 (Ariz. Ct. App. 1993). The failure to do so is fatal to invoking the mode-of-

4  operation rule. *Id.* (rejecting mode-of-operation rule where evidence was that spills were

5  infrequent); *Contreras v. Walgreens Drug Store No. 3837*, 149 P.3d 761, 764 (Ariz. Ct.

6  App. 2006) ("The fact that spills occurred twice a week in a store open twenty-four hours

7  a day, without any other evidence about the location of the spills or the hazard they present

8  to customers, is not sufficient for a reasonable jury to conclude that a hazardous condition

9  resulting from those spills would regularly occur.").

10  Finally, even if Plaintiff had met the first requirement of the mode-of-operation rule,

11  she still needed to point to evidence that Defendant did not exercise reasonable care

12  regarding the regularly occurring spills. It is undisputed Defendant had two employees on

13  duty who were "constantly looking for anything that can cause an incident on the floor."

14  (Doc. 35 at 2). Those employees were responsible with monitoring the store and

15  remedying any unsafe conditions. Those employees were required to fill out sheets every

16  half-hour indicating they had checked the store for hazards. The employees did so on the

17  day of Plaintiff's injury, indicating the area of Plaintiff's fall had been checked at 2:00 p.m.

18  Plaintiff presents no argument or evidence that Defendant acted unreasonably by assigning

19  two full-time employees to check the store and documenting those checks every thirty

20  minutes. While Plaintiff apparently believes Defendant did not exercise reasonable care,

21  the Court "is not required to manufacture arguments" for Plaintiff. *Hiken v. Dep't of Def.*,

22  836 F.3d 1037, 1046 (9th Cir. 2016). Thus, even if Plaintiff had evidence that spills

23  regularly occurred, she has not established there is a dispute of fact regarding the

24  reasonableness of Defendant's actions. Absent any argument that Defendant failed to

25  exercise reasonable care, Plaintiff cannot avoid summary judgment based on the mode-of-

26  operation rule.

27  Accordingly,

28  **IT IS ORDERED** the Motion for Summary Judgment (Doc. 34) is **GRANTED**.

1    The Clerk of Court is directed to enter judgment in favor of Defendant and against Plaintiff.

2        Dated this 23rd day of April, 2019.

_____
Honorable Roslyn O. Silver
Senior United States District Judge